HONORABLE BENJAMIN H. SETTLE

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

DANIEL JOSEPH, an individual, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

TRUEBLUE INC., dba LABOR READY, INC., and TRUEBLUE, INC., Washington corporations,

Defendants.

NO. 3:14-cv-05963-BHS

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO COMPEL ARBITRATION
CASE NO. 3:14-cv-05963-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

**TABLE OF CONTENTS**

Page No.

I.    INTRODUCTION ..............................................................................................1

II.   STATEMENT OF FACTS ................................................................................2

      A.    Procedural Background ..........................................................................2

      B.    Defendant TrueBlue is Not a Party to Labor Ready Midwest's
            Employment Agreement with Plaintiff ..................................................3

      C.    The Arbitration Clause in the Employment Agreement Does Not
            Apply to Plaintiff's Claims Under the Telephone Consumer Protection
            Act ..........................................................................................................4

      D.    True Blue Sent the Offending Text Messages Long After Plaintiff's
            Employment with Labor Ready Midwest, Inc. Ended ...........................4

III.  AUTHORITY AND ARGUMENT ....................................................................5

      A.    Defendant's Motion to Compel Arbitration Should Be Denied Because
            Plaintiff's TCPA Claims Are Not Within the Scope of the Arbitration
            Clause in Labor Ready's Employment Agreement .................................5

            1.    The Court Decides the Scope of the Arbitration Clause ...........6

            2.    Plaintiff Did Not Agree to Arbitrate Claims Arising Under the
                  Telephone Consumer Protection Act.........................................6

            3.    Defendant's Cases Do Not Support Arbitration........................9

            4.    Plaintiff's TCPA Claims Do Not "Arise Out Of" or "Relate To"
                  His Past Employment with Labor Ready Midwest ................10

            5.    Defendant Claims Its Text Messages Are Governed By A
                  Different Mobile Terms of Use Agreement that Does Not
                  Require Arbitration.................................................................12

      B.    Defendant TrueBlue is Not Entitled to Enforce Labor Ready Midwest,
            Inc.'s Arbitration Provision ...............................................................13

IV.   CONCLUSION ..............................................................................................16

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1

**TABLE OF AUTHORITIES**

2

Page No.

3

**FEDERAL CASES**

4

*Bailey v. Ameriquest Mortg. Co.*,
5
    346 F.3d 821 (8th Cir. 2003) .........................................................................10

6
*Berthel Fisher & Co. Fin. Servs., Inc. v. Larmon*,
    695 F.3d 749 (8th Cir. 2012) .....................................................................6, 7
7

8
*Bratt Enters., Inc., v. Noble Int'l Ltd.*,
    338 F.3d 609 (6th Cir.2003) ..........................................................................7

9
*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
10
    622 F.3d 996 (9th Cir. 2010) .........................................................................6

11
*Brown v. TrueBlue, Inc.*,
    Case No. 1:10-CV-0514, 2011 WL 5869773 (M.D. Pa. Nov. 22, 2011) ........10
12

13
*Cayanan v. Citi Holdings, Inc.*,
    928 F. Supp. 2d 1182 (S.D. Cal. 2013) ....................................................10, 11

14
*Chiafos v. Rest. Depot, LLC*,
15
    Case No. 09-0499 ADM/AJM, 2009 WL 2778077 (D. Minn. Aug. 28, 2009) ...............9

16
*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ...................................................................6, 7
17

18
*Curwen v. Dynan*,
    Case No. C11-5598BHS, 2011 WL 6179259 (W.D. Wash. Dec. 13, 2011) ....................6
19

20
*Dayhoff Inc. v. H.J. Heinz Co.*,
    86 F.3d 1287 (3d Cir. 1996) .........................................................................13

21
*E.E.O.C. v. Waffle House, Inc.*,
22
    534 U.S. 279 (2002) .......................................................................................7

23
*Franke v. Poly-America Medical and Dental Benefits Plan*,
    555 F.3d 656 (8th Cir. 2009) .......................................................................10
24

25
*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ........................................................................................9

26

27

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002) .................................................................................5, 6, 13

*In re Jiffy Lube Int'l, Inc.*,
   847 F. Supp. 2d 1253 (S.D. Cal. 2012) ....................................................11, 12

*Inhalation Plastics, Inc. v. Medex Cardio–Pulmonary, Inc.*,
   383 F. App'x. 517 (6th Cir. 2010).....................................................................7

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) ...................................................................13, 14

*Lang v. Burlington N. R.R. Co.*,
   835 F. Supp. 1104 (D. Minn. 1993) .............................................................9, 10

*Newspaper Guild of St. Louis, Local 36047 v. St. Louis Post Dispatch, LLC*,
   641 F.3d 263 (8th Cir.2011)............................................................................7

*Rajagopalan v. NoteWorld, LLC*,
   718 F.3d 844 (9th Cir. 2013) .........................................................................15

*Rosenblum v. Travelbyus.com*,
   299 F.3d 657 (7th Cir. 2002) ..........................................................................8

*Simon v. Pfizer Inc.*,
   398 F.3d 765 (6th Cir. 2005) ..........................................................................9

*Turi v. Main St. Adoption Serv.*,
   633 F.3d 496 (6th Cir. 2011) ..........................................................................9

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
   363 U.S. 574 (1960) .................................................................................5, 13

*U.S. ex rel. Paige v. BAE Sys. Tech. Solutions & Servs., Inc.*,
   566 F. App'x. 500 (6th Cir. 2014)..................................................................8, 9

*Van Ness Townhouses v. Mar Indus. Corp.*,
   862 F.2d 754 (9th Cir. 1988) ..........................................................................5

*Wagner v. Discover Bank*,
   Case No. 12-cv-02786-MSK-BNB, 2014 WL 128372 (D. Colo. January 13,
   2014)........................................................................................................12

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO COMPEL ARBITRATION - iii
CASE NO. 3:14-CV-05963-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1

## STATE CASES

2

*Ottman v. Fadden*,
        575 N.W.2d 593 (1998) ................................................................................................. 10

3

4

## FEDERAL STATUTES

5

9 U.S.C. §§ 1–16 .................................................................................................................. 5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

# I.  INTRODUCTION

Defendant TrueBlue, Inc.'s motion to compel arbitration should be denied because: (1) TrueBlue is trying to force Plaintiff to arbitrate his spam text message claims based on an arbitration agreement that applies only to employment claims; (2) TrueBlue is not entitled to enforce the arbitration agreement because it is not a party to the employment contract; and (3) TrueBlue's text messaging services purport to be governed by a separate Mobile Terms of Use Agreement that does not contain an arbitration clause.

The arbitration agreement stems from Plaintiff's brief employment with TrueBlue subsidiary, Labor Ready Midwest, Inc.  Plaintiff worked for Labor Ready Midwest on three occasions between December 14, 2013 and January 3, 2014.  As part of that stint, Plaintiff signed an Employment and Dispute Resolution Agreement ("Employment Agreement") and a Dispatch and Employment Terms and Conditions Agreement ("Dispatch Agreement").  The Employment Agreement requires Plaintiff to arbitrate disputes with Labor Ready Midwest arising from his employment with Labor Ready Midwest.  Defendant TrueBlue is not a party to the contract and Labor Ready Midwest is not a party to this lawsuit.  In addition, the Dispatch Agreement states that "any text messaging services will be governed by the terms of service and privacy policy indicated by the text messages … receive[d]."  The Mobile Terms of Use Agreement does not contain an arbitration clause.

In May 2014, long after his employment with Labor Ready Midwest ended, Plaintiff received a barrage of text messages from TrueBlue.  Plaintiff had told TrueBlue not to text him in March 2014, also well beyond the end of his employment with Labor Ready Midwest.  The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), generally prohibits sending unwanted text messages to others' cellular telephones.  Accordingly, Plaintiff brought this action to remedy TrueBlue's violations of the TCPA.

Now, TrueBlue seeks to use Plaintiff's limited agreement to arbitrate employment issues with Labor Ready Midwest to compel Plaintiff to arbitrate his unrelated spam text

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

message claims against TrueBlue.  However, the Employment Agreement with Labor Ready Midwest expressly states that it only requires arbitration of claims relating to Plaintiff's *employment* with Labor Ready Midwest, his *application for employment* with Labor Ready Midwest, the *termination of his employment* with Labor Ready Midwest, or the *Employment Agreement* itself.  The Employment Agreement also expressly provides that any arbitration is to be administered by the "American Arbitration Association ("AAA") under its <u>Employment Arbitration rules</u> then in effect."  (Emphasis added.)  Moreover, those rules govern disputes involving alleged "wrongful termination, sexual harassment, or discrimination."  Plaintiff's spam text message claim against TrueBlue does not concern his application for, termination of or contract for employment, or involve any sort of employment-related claim.  Thus, it does not fall within the scope of the Employment Agreement's arbitration clause.

In any event, the Employment Agreement does not give TrueBlue the right to compel Plaintiff to arbitrate anything.  TrueBlue is not a party to the agreement, TrueBlue did not sign the agreement, and the terms of the Employment Agreement do not extend the obligation to arbitrate or the right to compel arbitration to TrueBlue.

Finally, the Dispatch Agreement Labor Ready Midwest required Plaintiff to sign explicitly provides that "any text messaging services will be governed by the terms of service and privacy policy indicated by the text messages … receive[d]."  The Mobile Terms of Use Agreement indicated by the text messages Plaintiff received does not include an arbitration clause.

Accordingly, as explained in more detail below, the court should deny Defendant's motion to compel arbitration.

## II.  STATEMENT OF FACTS

### A.    Procedural Background

Plaintiff Daniel Joseph, on behalf of himself and a proposed class of similarly situated individuals, brought suit against Defendant TrueBlue for sending unwanted text messages in

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO COMPEL ARBITRATION - 2
CASE NO. 3:14-cv-05963-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

violation of the TCPA.  ECF No. 1 ¶ 3.  Plaintiff alleges these unwanted text messages violate the TCPA because TrueBlue sent them after Plaintiff and the putative class members asked TrueBlue not to text them.  *Id.*  Plaintiff seeks an injunction barring Defendant TrueBlue from continuing to send unwanted text messages and an award of statutory damages to him and the Class.  *Id.*

**B.      Defendant TrueBlue is Not a Party to Labor Ready Midwest's Employment Agreement with Plaintiff**

Plaintiff worked for Labor Ready on three occasions between December 14, 2013 and January 3, 2014.  *See* ECF No. 45 ¶ 18.  As a condition of his employment, Labor Ready required Plaintiff to sign a form Employment and Dispute Resolution Agreement (the "Employment Agreement").  ECF No. 44, Ex. A.

The Employment Agreement specifies the parties to it, expressly stating that Plaintiff's employer is "the Labor Ready legal entity listed on [his] paycheck or pay stub."  ECF No. 44, Ex. A.  The Labor Ready legal entity listed on Plaintiff's payroll documents was Labor Ready Midwest, Inc.  *See* Declaration of Beth E. Terrell ("Terrell Decl."), Ex. 1; *see also* ECF No. 14 ¶ 15 (indicating that Labor Ready Midwest is the "entity that employed Plaintiff").  Labor Ready Midwest is not a party to this lawsuit.

Defendant TrueBlue is a separate legal entity from Labor Ready Midwest, Inc.  *See* ECF No. 14 ¶¶ 5 – 6.  Defendant TrueBlue is not identified as a party to the Employment Agreement, or otherwise given any rights under the agreement.  *See* ECF No. 45, Ex. A.  Indeed, Defendant TrueBlue admits in its answer that it "did not employ Plaintiff or Putative Class Members."  ECF No. 15 at p.16 (Sixteenth Affirmative Defense).

Defendant TrueBlue operated a text alert service that uses the short code 42800.  ECF No. 1 ¶ 19; *see also* ECF No. 14 ¶ 20.  Text messages sent by TrueBlue purport to be governed by a separate Mobile Terms of Use Agreement.  *See* ECF No. 1, Ex. B, p. 1 (directing Plaintiff to jri.cc/lr/tnc); *see also* Terrell Decl., Ex. 2.  Defendant TrueBlue directed Plaintiff to the Mobile Terms of Use Agreement when he tried to stop the text messages sent by TrueBlue.

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

ECF No. 1, Ex. B.  The Mobile Terms of Use Agreement does not include an arbitration clause.

Terrell Decl., Ex.2.

**C.   The Arbitration Clause in the Employment Agreement Does Not Apply to Plaintiff's Claims Under the Telephone Consumer Protection Act**

Plaintiff's Employment Agreement with Labor Ready Midwest contains a dispute resolution provision that provides for arbitration of employment claims, including "any claims arising out of or relating to [Plaintiff's] employment, application for employment, and/or termination of employment," or relating to the Employment Agreement.  ECF No. 44, Ex. A. The Employment Agreement goes on to specify the types of employment related claims subject to the arbitration clause to include "claims based on any alleged violation of a constitution, or any federal, state, or local laws; Title VII claims of discrimination, harassment, retaliation, wrongful termination, wages, compensation due or violation of civil rights; or any claim based in tort, contract or equity."  *Id*.  Under the Employment Agreement, arbitration of such claims must be conducted by the "American Arbitration Association ("AAA") under its Employment Arbitration rules then in effect."  *Id*.  The AAA's Employment Arbitration rules likewise govern workplace disputes involving alleged "wrongful termination, sexual harassment, or discrimination…."  *See* Terrell Decl., Ex. 3.  The rules do not cover TCPA claims or consumer claims generally.  *Id.*

**D.   True Blue Sent the Offending Text Messages Long After Plaintiff's Employment with Labor Ready Midwest, Inc. Ended**

Pursuant to the Employment Agreement, Plaintiff's employment with Labor Ready Midwest was at-will such that it could be "terminated at any time" by Plaintiff or Labor Ready Midwest, with or without notice.  *Id.*  Under Labor Ready Midwest's Dispatch and Employment Terms and Conditions Agreement (the "Dispatch Agreement"), Plaintiff's employment was terminated at the end of the day on the last day he worked at Labor Ready. ECF No. 44, Ex. B ("my employment with Labor Ready is terminated at the end of each day").

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

After Plaintiff's employment with Labor Ready Midwest ended, however, he received text messages from TrueBlue.  *Id.*; *see also* ECF No. 1 ¶¶ 22 – 27.  This continued for months after Plaintiff's employment with Labor Ready Midwest ended.  ECF No. 1 ¶¶ 23 – 27.  Due to the sheer volume of text messages he was receiving, Plaintiff took action to have them stopped as he no longer wanted or had reason to be bothered with them.  *Id.* ¶ 22.  On March 8, 2014, at approximately 8:32 a.m., Plaintiff texted the word "Stop" to TrueBlue's message service.  *Id.* ¶¶ 19 – 23.  Nevertheless, Defendant continued to repeatedly text Plaintiff.  *Id.* ¶ 27.  Indeed, Defendant texted Plaintiff more than 50 times between May 5, 2014 and May 16, 2014, more than four months after his employment with Labor Ready Midwest had ended.  *Id.* Plaintiff's TCPA claims against TrueBlue are based on the text messages it sent him after March 8, 2014.  *Id.* ¶ 26.

## III.  AUTHORITY AND ARGUMENT

**A.    Defendant's Motion to Compel Arbitration Should Be Denied Because Plaintiff's TCPA Claims Are Not Within the Scope of the Arbitration Clause in Labor Ready's Employment Agreement**

The Federal Arbitration Act ("FAA") reflects the fundamental principle that arbitration is a matter of contract.  9 U.S.C. §§ 1–16; *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).  While such clauses are to be broadly construed, "a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit."  *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 580 (1960).  Contracts providing for arbitration are therefore to "be carefully construed."  *Id.* at 590.  Thus, the court's first step is to determine whether there is a valid agreement to arbitrate that governs the claims at issue.  *See Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756 (9th Cir. 1988) ("When we are asked to compel arbitration of a dispute, our threshold inquiry is whether the parties agreed to arbitrate.").

Plaintiff's consumer protection claims under the TCPA do not fall within the scope of the arbitration clause contained in the Employment Agreement with Labor Ready Midwest

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

because there is no valid agreement to arbitrate these particular claims.  Defendants' motion to compel arbitration should be denied.

      1.      <u>The Court Decides the Scope of the Arbitration Clause</u>

Arbitrability is a question for the courts to decide.  *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 998 (9th Cir. 2010) ("The arbitrability of a particular dispute is a threshold issue to be decided by the courts, unless that issue is explicitly assigned to the arbitrator").  Courts regularly decide challenges that claims are outside the scope of an arbitration clause.  *See Curwen v. Dynan*, Case No. C11-5598BHS, 2011 WL 6179259, at *1 (W.D. Wash. Dec. 13, 2011) (finding the court decides "whether a matter is subject to an arbitration agreement"); *see also Berthel Fisher & Co. Fin. Servs., Inc. v. Larmon*, 695 F.3d 749, 752 (8th Cir. 2012) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.") (citation omitted); *and see Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (Courts must enforce arbitration agreements <u>according to their terms</u>); *and see Howsam*, 537 U.S. at 83 (2002) (citing *AT&T Techs., Inc. v. Commc'n Workers of America*, 475 U.S. 643, 649 (1986) ("[q]uestions of arbitrability" – such as whether an arbitration agreement exists and whether an arbitration clause covers the dispute in question – are issues "for judicial determination unless the parties clearly and unmistakably provide otherwise.").

In their opening brief, Defendant TrueBlue asks this Court to resolve this issue.  ECF No. 43 at 8:3 – 14:12.  Defendant's concession that this Court should decide this issue is correct and resolves the issue for this case.  The question regarding whether the arbitration clause in Labor Ready Midwest's Employment Agreement covers Plaintiff's consumer protection claims under the TCPA must be decided by this Court.

      2.      <u>Plaintiff Did Not Agree to Arbitrate Claims Arising Under the Telephone Consumer Protection Act</u>

The resolution of the question of arbitrability turns on an interpretation of the arbitration clause.  "[W]hen deciding whether to compel arbitration, a court asks whether a valid

1  agreement to arbitrate exists, and if so, whether the dispute falls within the scope of that

2  agreement." *Newspaper Guild of St. Louis, Local 36047 v. St. Louis Post Dispatch, LLC,* 641

3  F.3d 263, 266 (8th Cir.2011) (citation omitted); *see also Berthel Fisher & Co. Fin. Servs., Inc.*,

4  695 F.3d at 752 (same); *Chiron Corp.*, 207 F.3d 1130 (same).

5        Whether a claim falls within the scope of an arbitration clause is determined by looking

6  to the plain language of the agreement.  *See Inhalation Plastics, Inc. v. Medex Cardio–*

7  *Pulmonary, Inc.*, 383 F. App'x. 517, 521 (6th Cir. 2010) ("An arbitration clause should be

8  interpreted consistent with the terms of the agreement and should be enforced in the same

9  manner as any other privately negotiated contract."); *see also E.E.O.C. v. Waffle House, Inc.*,

10  534 U.S. 279, 294 (2002) ("While ambiguities in the language of the agreement should be

11  resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a

12  result inconsistent with the plain text of the contract, simply because the policy favoring

13  arbitration is implicated.").  Thus, when an arbitration clause states that it extends only to a

14  specific type of dispute, a court cannot require arbitration of claims that are not covered by the

15  clause.  *See Bratt Enters., Inc., v. Noble Int'l Ltd.,* 338 F.3d 609, 612 (6th Cir.2003)

16  ("Congress's preeminent concern in enacting the FAA—the enforcement of private agreements

17  to arbitrate as entered into by the parties—requires that the parties only be compelled to

18  arbitrate matters within the scope of their agreement.") (citing *Dean Witter Reynolds, Inc. v.*

19  *Byrd,* 470 U.S. 213, 221 (1985)).

20        Here, the arbitration clause in the Employment Agreement states that it extends only to

21  employment-related claims against Labor Ready Midwest.  ECF No. 44, Ex. A.  Specifically,

22  the clause explicitly limits the disputes subject to arbitration to those "arising out of or relating

23  to [Plaintiff's] <u>employment, application for employment, and/or termination of employment</u>,"

24  or the Employment Agreement itself.  *Id*. (emphasis added).  Indeed, under "Arbitration

25  Procedure," the agreement further provides that arbitration of Plaintiff's employment-related

26  claims must be conducted by the "American Arbitration Association ("AAA")" under its

27

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO COMPEL ARBITRATION - 7
CASE NO. 3:14-CV-05963-BHS

1  Employment Arbitration rules then in effect." *Id.* (emphasis added).  These rules apply to

2  "workplace disputes involving alleged wrongful termination, sexual harassment, or

3  discrimination…." *See* Terrell Decl., Ex. 3.  They do not apply to consumer claims such as the

4  TCPA.  Plaintiff makes no claims in this case involving workplace disputes and the scope of

5  the arbitration clause is not so broad as to encompass Plaintiff's claims under the TCPA, which

6  are unrelated to his past employment with Labor Ready Midwest.

7       This result is in accord with other decisions considering the scope of arbitration clauses

8  contained in employment contracts.  In *Rosenblum v. Travelbyus.com*, 299 F.3d 657 (7th Cir.

9  2002), a broad arbitration clause in an employment agreement was found not to apply to a

10  claim alleging breach of a related acquisition agreement.  In addition to the contract breach, the

11  plaintiff alleged fraud under the acquisition agreement, but made no claims related to

12  employment.  *Id.*  The Seventh Circuit concluded: "The arbitration clause is not susceptible to

13  an interpretation that includes this dispute, which has *nothing to do with Mr. Rosenblum's*

14  *employment* with Travelbyus."  *Id.* at 664 (emphasizing the plaintiff's claims about breach of

15  the acquisition agreement were unaccompanied by any employment-related claims) (emphasis

16  added).

17       Likewise, in *U.S. ex rel. Paige v. BAE Sys. Tech. Solutions & Servs., Inc.*, 566 F. App'x.

18  500 (6th Cir. 2014), the Sixth Circuit determined that an arbitration clause similar to the one at

19  issue here was limited to employment disputes related to the employment agreement.  The

20  arbitration clause at issue in that case referred to "any dispute arising from this Agreement,"

21  "any dispute, which arises under the term of this Agreement," and "the dispute."  566 F. App'x.

22  at 503.  Read as a whole and in context, the Court determined "it is clear that these three

23  references all refer to the same dispute.  Thus, in context, the more general 'any dispute arising

24  from' language must be read to mean 'any dispute, which arises under the terms of this

25  Agreement.'"  *Id.*  The Court therefore concluded that the arbitration clause did not cover the

26  plaintiffs' qui tam action for violation of the False Claims Act, "because that claim does not

27

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO COMPEL ARBITRATION - 8
Case No. 3:14-cv-05963-BHS

1   arise under the terms of the Employment Agreement… is purely statutory and exists

2   independent of the [Employment] Agreement." *Id.*

3          As in *Paige*, Plaintiff's claim is not a workplace dispute or alleged violation of the

4   Employment Agreement; rather Plaintiff's claims are "completely separate from the contract"

5   and would "exist even without the contract."  566 F. App'x. at 504.  Plaintiff does not assert

6   that the "terms and conditions" of the Employment Agreement were violated.  Further, the

7   Employment Agreement "nowhere refers to … [non-employment related] statutory claims."

8   *Id.* (holding False Claims Act claims were not within the scope of the arbitration provision,

9   because "the Employment Agreement nowhere refers to the FCA, retaliation or statutory

10  claims"); *see also Turi v. Main St. Adoption Serv.,* 633 F.3d 496, 511 (6th Cir. 2011) (holding

11  RICO claim was not arbitrable because it was statutorily based and not referred to in the

12  arbitration clause); *Simon v. Pfizer Inc.,* 398 F.3d 765, 776 (6th Cir. 2005) (holding ERISA and

13  COBRA claims were not within the scope of an arbitration provision where the agreement did

14  not refer to either.).  Plaintiff cannot be compelled to arbitrate his statutory, consumer claims

15  under the TCPA, because those claims do not fall within the scope of the Employment

16  Agreement's arbitration clause.

17          3.      Defendant's Cases Do Not Support Arbitration

18          The cases cited by Defendant do not hold to the contrary.  *See* ECF No. 43 at 9:22 –

19  10:14 (citing cases).  In each case, the court compelled arbitration of claims that were actually

20  employment-related pursuant to employment contracts containing arbitration agreements that

21  encompassed those claims.  *Id.* (citing *Adkins v. Labor Ready*, 303 F.3d 496 (4th Cir. 2002)

22  (compelling arbitration of Fair Labor Standards Act claims for failure to pay earned wages);

23  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23 (1991) (compelling arbitration of

24  employee's age discrimination claim pursuant to arbitration clause in employment agreement);

25  *Chiafos v. Rest. Depot, LLC*, Case No. 09-0499 ADM/AJM, 2009 WL 2778077 (D. Minn. Aug.

26  28, 2009) (compelling arbitration of sexual harassment claims); *Lang v. Burlington N. R.R. Co.,*

27

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO COMPEL ARBITRATION - 9
CASE NO. 3:14-cv-05963-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

835 F. Supp. 1104, 1105-6 (D. Minn. 1993) (compelling arbitration of wrongful termination claim); *Ottman v. Fadden*, 575 N.W.2d 593 (1998) (compelling arbitration of employee's claims that internal memoranda relating to his professional status and work performance constituted defamation); *Franke v. Poly-America Medical and Dental Benefits Plan*, 555 F.3d 656, 658 (8th Cir. 2009) (compelling arbitration of ERISA claims where plaintiff-employee "acknowledged in writing his agreement to arbitrate any claims associated with his enrollment in the Plan"); *Bailey v. Ameriquest Mortg. Co.*, 346 F.3d 821 (8th Cir. 2003) (compelling arbitration of FLSA claims for unpaid overtime based on arbitration clause in employment agreement); *Brown v. TrueBlue, Inc.*, Case No. 1:10-CV-0514, 2011 WL 5869773, at *8 (M.D. Pa. Nov. 22, 2011) (compelling arbitration of alleged minimum wage act and FLSA violations)).

4.   <u>Plaintiff's TCPA Claims Do Not "Arise Out Of" or "Relate To" His Past Employment with Labor Ready Midwest</u>

Despite TrueBlue's assertions to the contrary, the term "relating to" in the Employment Agreement's arbitration clause does not bring Plaintiff's statutory consumer protection claims within the plain and narrow language of the clause. *See* ECF No. 43 at 12:6 – 14:7. Plaintiff's spam text message claims against TrueBlue do not "relate to" his employment with Labor Ready Midwest. Plaintiff's employment relationship with Labor Ready Midwest ended four months before TrueBlue sent Plaintiff the text messages at issue, and Plaintiff specifically instructed TrueBlue to stop texting him two months before it sent him the text messages at issue.

TrueBlue's reliance on *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1207 (S.D. Cal. 2013), does not change this analysis. In *Cayanan*, the plaintiff-borrowers brought claims under the TCPA for calls they received related to efforts to collect on their credit card accounts. 928 F. Supp. 2d at 1186. In determining that the arbitration clauses in the credit card agreements encompassed the plaintiffs' claims, the court focused on "[t]he plain language of [the] arbitration agreements" which indicated that "the parties intended to agree to broad

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

arbitration provisions." *Id*. at 1207. For example, one of the agreements provided for arbitration of "all disputes," including "without limitation, *anything related to* … [a]ny dispute about… collecting…." *Id*. (italics in original, underline added). The other agreements provided broadly for arbitration of any claims "relating to" the plaintiffs' credit card accounts, and included other broad language, including a "Broadest Interpretation" clause requiring that the arbitration provision be interpreted "in the broadest way the law will allow." *Id*. While the language in each of the agreements included the broad phrase "relating to," the language of each agreement also plainly encompassed the plaintiffs' claims because those claims actually arose from the defendant's collection efforts on the plaintiffs' delinquent credit card accounts. *Id*.[1]

Here, the parties agreed only to arbitrate disputes "relating to" Plaintiff's employment with Labor Ready Midwest or the Employment Agreement. ECF No. 44, Ex. A. Had Labor Ready Midwest intended the arbitration agreement to also encompass statutory consumer claims against an entity other than Labor Ready Midwest, it could have done so. Labor Ready Midwest, however, omitted any such claims, including TCPA claims, from the arbitration provision. Thus, Labor Ready Midwest plainly did not intend for the arbitration agreement to encompass Plaintiff's TCPA claims against TrueBlue.

This case is factually similar to *In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012), where the court denied a motion to compel arbitration of a TCPA claim. In that case, the plaintiffs filed a class action complaint alleging they received unauthorized text messages offering discounted Jiffy Lube services in violation of the TCPA. *Jiffy Lube*, 847 F. Supp. 2d at 1255-56. The arbitration agreement at issue was purportedly signed by the plaintiff when he visited one of the defendant's store locations to receive an oil change. *Id*. at 1262-63. The court noted that while "the text message offered membership in a club that would provide discounts on an oil change," that did "not establish that the text message was related to the

---

[1] In addition, unlike here, the disputes in *Cayanan* arose between the parties to the arbitration clauses and the TCPA claims arose between parties in an existing business relationship. 928 F. Supp. 2d at 1187 – 1192.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1   contract governing [the plaintiff's] oil change." *Id*.  That is, "[t]he existence of the original

2   contract may have been the 'but for' cause of the alleged TCPA violation, but this alone is not

3   necessarily enough to establish that the claim arises out of or relates to the contract." *Id*.; *see*

4   *also Wagner v. Discover Bank*, Case No. 12-cv-02786-MSK-BNB, 2014 WL 128372, at *5 (D.

5   Colo. January 13, 2014) (denying lender's motion to compel arbitration of TCPA claims arising

6   from collection calls finding that "[a]lthough the existence of the Account may have been the

7   'but for' cause of the alleged violations, that is not enough to establish that the claims arise

8   from or relate to the Account or the parties' relationship resulting from the Account."). The

9   same is true here.

10        Plaintiff's TCPA claims exist independent of his past employment with Labor Ready

11   Midwest and independent of the Employment Agreement.  His past employment alone is not

12   enough to establish that his unrelated TCPA claims arise out of or relate to the Employment

13   Agreement.  Indeed, TrueBlue sent unsolicited text messages in violation of the TCPA long

14   after the termination of Plaintiff's employment, and long after Plaintiff requested that TrueBlue

15   stop sending the text messages.  To conclude, as TrueBlue urges, that the arbitration clause

16   reaches Plaintiff's TCPA claims simply because Plaintiff at one time worked for Labor Ready

17   Midwest, would require the Court to effectively rewrite the parties' agreement to cover not just

18   claims "relating to [Plaintiff's] employment," but to "any claims at all against anyone."  This is

19   not permitted.

20        5.   Defendant Claims Its Text Messages Are Governed By A Different Mobile
              Terms of Use Agreement that Does Not Require Arbitration

21

22        In support of its motion, TrueBlue also cites the separate Labor Ready Midwest

23   Dispatch Agreement, which references the TCPA.  ECF No. 43 at 13:14-20; ECF 44, Ex. B.

24   TrueBlue fails to mention, however, that not only does the Dispatch Agreement not refer back

25   to the Employment Agreement, but it explicitly refers to another agreement that governs "any

26   text messaging service."  *See* ECF No. 44, Ex. B.  In particular, the "Consent to Text Message"

27   section of the Dispatch Agreement concludes, "I agree that my use of any text messaging

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO COMPEL ARBITRATION - 12
CASE NO. 3:14-cv-05963-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1  services will be governed by the terms of service and privacy policy indicated by the text

2  messages I receive." *Id.*  The "terms of service and privacy policy indicated by the text

3  messages" Plaintiff received is a Mobile Terms of Use Agreement.  *See* ECF No. 1, Ex. B

4  (directing Plaintiff to jri.cc/lr/tnc); *see also* Terrell Decl., Ex. 2.  The Mobile Terms of Use

5  Agreement does <u>not</u> include an arbitration clause.  Terrell Decl., Ex. 2.

6         That Labor Ready Midwest required Plaintiff to sign two separate agreements – one that

7  governed the terms and conditions of his employment and a separate agreement relating to text

8  messaging – is further evidence that the Labor Ready Midwest Employment Agreement does

9  not apply to Defendant TrueBlue's text messaging service.  Rather, as the Dispatch Agreement

10 drafted by Labor Ready provides, Defendant TrueBlue's text messaging service is "governed

11 by the terms of service and privacy policy" indicated by the text messages Plaintiff received.

12 ECF No. 44, Ex. B.  In short, by Labor Ready's own drafting, the Employment Agreement does

13 not govern Defendant TrueBlue's text messaging services.

14 **B.     Defendant TrueBlue is Not Entitled to Enforce Labor Ready Midwest,
           Inc.'s Arbitration Provision**

15
16        It is well established that "a party cannot be required to submit to arbitration any dispute

17 which he has not agreed to so submit."  *United Steelworkers of Am.*, 363 U.S. at 580; *see also*

18 *Howsam*, 537 U.S. at 83 (same).  Thus, a non-signatory parent corporation cannot "by reason of

19 their corporate relationship" enforce an arbitration clause signed by a wholly owned subsidiary,

20 absent an express agreement to that effect.  *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1297

21 (3d Cir. 1996); *see also Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013)

22 (precluding Toyota, who was non-signatory, from enforcing arbitration clause contained in

23 Toyota dealership contracts).  Moreover, a non-signatory can only invoke equitable estoppel to

24 enforce an arbitration agreement against a signatory under "very narrow confines…."  *Mundi v.*

25 *Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009) (citing *Comer v. Micor, Inc.*, 436

26 F.3d 1098, 1101 (9th Cir. 2006)); *see also Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th

27

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO COMPEL ARBITRATION - 13
Case No. 3:14-cv-05963-BHS

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1  Cir. 2013) (non-signatory precluded from invoking arbitration against signatory based on

2  doctrine of equitable estoppel).  Those narrow confines do not apply here.

3       In *Mundi*, the Ninth Circuit explained the rule allowing a non-signatory to enforce an

4  arbitration clause on "equitable estoppel" has two elements: (1) a close relationship between

5  the entities involved; and (2) claims that are intertwined with the underlying contract.  *Mundi*,

6  555 F.3d at 1046 (citations omitted).  In *Mundi*, the court denied the motion to compel

7  arbitration based on principles of equitable estoppel, focusing on the second element.  *Id*. at

8  1047.  Because the plaintiff's claims against the insurer were not "intertwined with the contract

9  providing for arbitration" and did not "arise out of or relate directly to" the contract, the *Mundi*

10  court held that the insurer (non-signatory) could not compel the plaintiff (signatory) to arbitrate

11  based on principles of equitable estoppel.  *Id*. at 1047 (internal marks omitted).

12       More recently, in *Kramer*, the Ninth Circuit specifically found the doctrine of equitable

13  estoppel was inapplicable.  *Kramer*, 705 F.3d at 1128-33.  In that case, the plaintiffs brought an

14  action against Toyota and its affiliated dealers alleging the vehicles plaintiffs purchased had

15  defective braking systems.  *Id*.  The plaintiffs had entered into purchase agreements with their

16  respective Toyota dealerships, which included arbitration provisions that clearly identified who

17  could elect to arbitrate, namely the plaintiffs or the dealerships.  *Id*. at 1125.  Toyota, the

18  manufacturer defendant, sought to compel arbitration under the purchase agreements.  *Id*.  The

19  Ninth Circuit rejected Toyota's argument that it was entitled to enforce the arbitration clause as

20  a non-signatory based on principles of equitable estoppel.  *Id*. at 1128-33.  The court found the

21  plaintiffs' claims were not intertwined with the underlying contractual obligations of the

22  purchase agreements and that "the allegations of collusion [between Toyota and the

23  dealerships] were not 'inextricably bound up with the obligations imposed by the agreement

24  containing the arbitration clause.'"  *Id*. at 1133.

25       Similarly, the Ninth Circuit has explained "we have **never** previously allowed a non-

26  signatory defendant to invoke equitable estoppel against a signatory plaintiff," and the court

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    once again declined a nonsignatory's request to invoke the doctrine. *Rajagopalan v.*

2    *NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (per curiam) (emphasis added). In that

3    case, a consumer entered a contract containing an arbitration provision with a debt-settlement

4    company. *Id*. at 845. The consumer sued a different company, NoteWorld, which handled and

5    processed the consumer's payments to the debt settlement company. *Id*. NoteWorld, a non-

6    signatory to the contract between the consumer and debt-settlement company, sought to compel

7    arbitration based on equitable estoppel. *Id*. at 846. Even though NoteWorld's name was

8    mentioned in the contract, the court found there was no evidence the consumer intended to

9    designate NoteWorld as a beneficiary. *Id*. Moreover, because the consumer did not contend

10   that NoteWorld breached any terms of any contract, and instead advanced statutory claims

11   separate from the contract, NoteWorld was precluded from invoking the arbitration provision

12   as a non-signatory. *Id*. at 847-48.

13       For the same reasons, Defendant TrueBlue, as a non-signatory to the Labor Ready

14   Midwest Employment Agreement, cannot use that agreement to compel Plaintiff to arbitrate his

15   claims. The Labor Ready Midwest Employment Agreement defines the parties as "the Labor

16   Ready legal entity indicated on [Plaintiff's] paycheck or pay stub." ECF No. 44, Ex. A. As

17   TrueBlue admits, Labor Ready Midwest, Inc. was the legal entity that employed Plaintiff and

18   TrueBlue "did not employ Plaintiff or Putative Class Members." ECF No. 15 at p.16

19   (Sixteenth Affirmative Defense); *see also* ECF No. 14 ¶ 15. Defendant further admits that

20   TrueBlue and Labor Ready Midwest, Inc. are different legal entities. *Id*. ¶¶ 5 – 6.

21       In addition, Plaintiff's claims against Defendant TrueBlue are separate and distinct from

22   the Labor Ready Midwest Employment Agreement and not intertwined with and do not arise

23   out of that contract. In fact, TrueBlue claims the text messages it sent Plaintiff that are the

24   subject matter of this litigation are governed by a separate Mobile Terms of Use Agreement.

25   *See* ECF No. 1, Ex. B; *see also* Terrell Decl., Ex. 2. When Plaintiff texted Defendant to "stop"

26   the offending texts (months after his employment with Labor Ready Midwest had ended, and

27

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO COMPEL ARBITRATION - 15
CASE NO. 3:14-cv-05963-BHS

**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1    months before TrueBlue sent the text messages at issue), Defendant TrueBlue directed Plaintiff

2    to that agreement, which does not include an arbitration clause. *See* ECF No. 1, Ex. B

3    (directing Plaintiff to jri.cc/lr/tnc); *see also* Terrell Decl., Ex. 2.  Here, as in *Kramer*, "the

4    inequities that the doctrine of equitable estoppel is designed to address are not present."  705

5    F.3d at 1134.  Defendant TrueBlue's motion to compel arbitration based on Labor Ready

6    Midwest's Employment Agreement with Plaintiff should be denied.

7                              **IV.  CONCLUSION**

8        For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendants'

9    motion to compel arbitration.

10        RESPECTFULLY SUBMITTED AND DATED this 26th day of January, 2015.

11                     TERRELL MARSHALL DAUDT & WILLIE PLLC

12

13           By:   /s/ Beth E. Terrell, WSBA #26759
                     Beth E. Terrell, WSBA #26759

14                   Email:  bterrell@tmdwlaw.com
                  936 North 34th Street, Suite 300

15                   Seattle, Washington  98103-8869
                  Telephone:  (206) 816-6603

16                   Facsimile:  (206) 350-3528

17

18                   Keith James Keogh*, Admitted Pro Hac Vice*
                  Email: keith@keoghlaw.com

19                   Michael Scott Hilicki*, Admitted Pro Hac Vice*
                  Email: MHilicki@keoghlaw.com

20                   KEOGH LAW, LTD.
                  55 W. Monroe Street, Suite 3390

21                   Chicago, Illinois  60603
                  Telephone:  (312) 726-1092

22                   Facsimile:   (312) 726-1093

23

24

25

26

27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

1

Christopher A. Johnston
Email:  cjohnston@jm-legal.com

2

Christopher P. Martineau
Email: cmartineau@jm-legal.com

3

JOHNSTON MARTINEAU PLLP
2233 Hamline Avenue North, Suite 102

4

Saint Paul, Minnesota  55113
Telephone:  (651) 269-8463

5

Facsimile:   (612) 379.0480

6

*Attorneys for Plaintiff*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CERTIFICATE OF SERVICE

1

2          I, Beth E. Terrell, hereby certify that on January 26, 2015, I electronically filed the

3   foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4   such filing to the following:

5          Michael E. McAleenan, WSBA #29426
           Email:  mmc@smithalling.com
6          Email:  julie@smithalling.com
           SMITH ALLING, PS
7          1515 Dock Street, Suite 3
           Tacoma, Washington  98402
8          Telephone:  (253) 627-1091
           Facsimile:  (253) 627-0123
9

10         David R. Ongaro, *Admitted Pro Hac Vice*
           Email:  david.ongaro@tklaw.com
11         Amelia Winchester, *Admitted Pro Hac Vice*
           Email:  amelia.winchester@tklaw.com
12         THOMPSON & KNIGHT, LLP
           50 California Street, Suite 3325
13         San Francisco, California  94111
           Telephone:  (415) 433-3901
14         Facsimile:  (415) 433-3950

15

16         *Attorneys for Defendants*

17         DATED this 26th day of January, 2015.

18                              TERRELL MARSHALL DAUDT
19                                & WILLIE PLLC

20                              By:    /s/ Beth E. Terrell, WSBA #26759
                                    Beth E. Terrell, WSBA #26759
21                                  Email:  bterrell@tmdwlaw.com
                                    936 North 34th Street, Suite 300
22                                  Seattle, Washington  98103-8869
                                    Telephone:  (206) 816-6603
23                                  Facsimile:  (206) 350-3528

24

25                              *Attorneys for Plaintiff*

26

27