UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIEL JOSEPH, an individual, on behalf of himself and all others similarly situated,

Plaintiff,

v.

TRUEBLUE, INC, d/b/a LABOR READY, INC., and TRUEBLUE, INC., Washington corporations,

Defendant.

CASE NO. C14-5963 BHS

ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION

This matter comes before the Court on Defendant TrueBlue, Inc., d/b/a Labor Ready, Inc. and TrueBlue, Inc.'s (collectively "TrueBlue")[1] motion to compel arbitration and stay litigation (Dkt. 43). The Court has considered the pleadings filed in support of

---

[1] A d/b/a allows a corporation to operate under a name other than the registered name of the corporation, but does not create a separate legal entity. Therefore, for the purposes of this motion, the only Defendant entity is TrueBlue.

ORDER - 1

and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On August 25, 2014, Plaintiff Daniel Joseph ("Joseph") filed a class action complaint against TrueBlue asserting numerous violations of the Telephone Consumer Protection Act, 47 U.S.C § 227, *et seq.* ("TCPA"). Dkt. 1.

On January 8, 2015, TrueBlue filed the instant motion requesting that the Court compel the parties to arbitration and stay this action. Dkt. 43. On January 26, 2015, Joseph responded. Dkt. 46. On January 30, 2015, TrueBlue replied. Dkt. 48.

## II. FACTUAL BACKGROUND

On December 10, 2013, Joseph signed an "Employment and Dispute Resolution" agreement with Labor Ready, a TrueBlue company. Dkt. 44, Declaration of Todd Gilman ("Gilman Decl."), Exh. A ("Arbitration Agreement"). The agreement provides, in relevant part, as follows:

> <u>Agreement to arbitrate.</u> Labor Ready and I agree that for any claim arising out of or relating to my employment, application for employment, and/or termination of employment, this Agreement, or the breach of this Agreement, shall be submitted to and resolved by binding individual arbitration under the Federal Arbitration Act ("FAA"). Labor Ready and I agree that all claims shall be submitted to arbitration including, but not limited to, claims based on any alleged violation of a constitution, or any federal, state, or local laws; Title VII claims of discrimination, harassment, retaliation, wrongful termination, wages, compensation due or violation of civil rights; or any claim based in tort, contract, or equity. In no way does this agreement limit an employee's ability to bring claims before the NLRB, EEOC, or any local, state or federal governmental or administrative agency, or the procedures of those agencies.
> ***

1       <u>Scope of Arbitration</u>.  Labor Ready and I agree that arbitration in no way limits the relief that any party may seek in the jurisdiction in which arbitration has been filed. **LABOR READY AND I AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN MY OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION, COLLECTIVE ACTION, OR REPRESENTATIVE PROCEEDING**. Further, unless both Labor Reedy and I agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. If this specific provision is found to be unenforceable, then the entirety of this arbitration provision shall be null and void. Notwithstanding the foregoing, either party may bring an individual action in small claims court.

*Id*.

On that same day, Joseph entered into a "Dispatch and Employment Terms and Conditions" agreement.  Gilman Decl., Exh. B ("Text Agreement").  That agreement provides, in relevant part, as follows:

      **Consent to Text Message Contact**. In order to receive alerts regarding potential job opportunities ("Job Alerts") and other messages related to my actual or prospective employment (such as general announcements and safely tips) and for other purposes, I agree that Labor Ready and its affiliates, agents, service providers, business partners, successors, and/or assigns ("Company") may contact me by telephone at any telephone number that I have provided to Company or will provide to Company, including telephone numbers that are or may be assigned to wireless devices. I acknowledge and agree that Company may place such telephone calls by voice call and/or text messaging (including SMS and/or MMS text messages). I further agree that Company may place such telephone calls through the use of pre-recorded/artificial voice messages and/or tile use of an automatic telephone dialing device. I understand that Company may contact me by telephone, including by text messaging, any day of the week and at any time, and understand that I may incur charges related to such contact in accordance with my wireless telephone plan otherwise. . . . I waive any right to a legal action under the Telephone Consumer Protection Act, or any similar state or federal law, in connection with any telephone contact from Company.

*Id*.

### III. DISCUSSION

As a threshold matter, TrueBlue has improperly presented its strongest arguments. TrueBlue initially argued that the Court should compel arbitration because a valid arbitration agreement exists that covers Joseph's claims. Dkt. 43 at 14–19. Joseph responded that TrueBlue may not compel arbitration because TrueBlue is not a party to either the Arbitration Agreement or the Text Agreement. Dkt. 46. TrueBlue replied and argued that it may enforce the agreements under the theory of equitable estoppel, agency, or third-party beneficiary. Dkt. 48 at 11–16. "[A] party may not make new arguments in the reply brief." *United States v. Cox*, 7 F.3d 1458, 1463 (9th Cir. 1993). Therefore, ignoring TrueBlue's new arguments, the Court denies Defendant's motion because TrueBlue's status as a non-signatory to the contracts in question sufficiently disposes of their original arguments. The Court, however, will briefly address TrueBlue's new arguments.

With regard to equitable estoppel, the Ninth Circuit has "never previously allowed a non-signatory defendant to invoke equitable estoppel against a signatory plaintiff . . . ." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013). "Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Id.* (quoting *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009)). Equitable estoppel may also exist "if there is both a 'close relationship between the entities involved,' and a 'relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual

1   obligations." *Soto v. American Honda Motor Co., Inc.*, 946 F. Supp. 2d 949, 955 (N.D.

2   Cal. 2012) (quoting *Mundi*, 555 F.3d at 1046).

3         In this case, TrueBlue is not entitled to enforce arbitration by equitable estoppel.

4   First, Joseph is not claiming the benefits of either contract he signed.  His claims are

5   completely independent from any benefit conferred by those contracts because Joseph is

6   asserting TCPA claims that do not arise out of or relate to either contract.  *See Mundi*,

7   555 F.3d at 1047.  Similar to Mr. Rajagopalan, Joseph has "statutory claims that are

8   separate from the [ ] contract itself."  *Rajagopalan*, 718 F.3d at 847.  Therefore, TrueBlue

9   is not entitled to enforce the contracts on the basis that Joseph is claiming any benefit of

10  the underlying contracts.

11        Second, although TrueBlue bears a close relationship with the signatory to the

12  contracts, Joseph's claims against TrueBlue are not inextricably intertwined with those

13  contracts.  Dkt. 48 at 11–15.  Courts have found that a close relationship exists when the

14  signatory was a wholly-owned subsidiary of the defendant.  *See, e.g., Soto*, 946 F. Supp.

15  2d at 955–956.  TrueBlue, however, must also show that Joseph's claims are inextricable

16  intertwined with the relevant contracts.  *Id*.  On this element, TrueBlue argues that

17  Joseph's claims are inextricably intertwined because Joseph gave his consent to receive

18  text messages and consent is a defense to TCPA claims.  Dkt. 48 at 13.  While TrueBlue

19  is correct that "burden of proof is on defendant to establish that plaintiff expressly

20  consented to be contacted at her cell phone number," *Chavez v. Advantage Group*, 959 F.

21  Supp. 2d 1279, 1281 (D. Colo. 2013), this only shows that one of TrueBlue's affirmative

22  defenses is based on the contract and does not show that Joseph's claims are inexplicitly

1  intertwined with the contract.  Therefore, the Court denies TrueBlue's motion on this
2  basis as well.
3       With regard to TrueBlue's agency argument, TrueBlue cites numerous California
4  cases for the proposition that a non-signatory sued as an agent of a signatory may compel
5  arbitration pursuant to a contract.  Dkt. 48 at 15 n.31–32.  TrueBlue has failed to show
6  that California law applies to the contracts in question.  Therefore, the Court denies
7  TrueBlue's motion on this issue.
8       With regard to third-party beneficiary, TrueBlue argues that it is a third-party
9  beneficiary of both agreements in question.  This argument is based on the fact that both
10 agreements state that Labor Ready is a TrueBlue company.  An "'indirect reference to a
11 third party does not make the third party a beneficiary of the [contract].'" *Rajagopalan*,
12 718 F.3d at 847 (quoting *Tooley v. Stevenson Co–Ply, Inc.*, 106 Wn.2d 626 (1986)).  An
13 indirect reference to TrueBlue is insufficient to establish a third-party beneficiary.
14 Therefore, the Court denies TrueBlue's motion on this issue.
15      With regard to a stay, TrueBlue initially requested a stay pending arbitration of the
16 claims in this case.  Dkt. 43 at 26.  Joseph failed to respond to the specific issue of a stay.
17 In their reply, TrueBlue argues that the Court should stay claims against TrueBlue, while
18 Joseph arbitrates his claims against Labor Ready.  Without further explanation, it is
19 unclear whether Joseph is pursuing a different action against Labor Ready that is
20 currently in arbitration.  Joseph does assert that the other signatory to the contract, Labor
21 Ready Midwest, Inc., is not a party to this lawsuit.  Dkt. 46 at 6.  Thus, TrueBlue's
22 request is confusing, and the Court declines to currently stay any claim in this matter.

## IV. ORDER

Therefore, it is hereby **ORDERED** that TrueBlue's motion to compel arbitration and stay litigation (Dkt. 43) is **DENIED**.

Dated this 11th day of February, 2015.

BENJAMIN H. SETTLE
United States District Judge