UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DANIEL JOSEPH, an individual, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>TRUEBLUE, INC., d/b/a LABOR READY, INC., and TRUEBLUE, INC., Washington corporations,<br><br>     Defendant. | CASE NO. C14-5963 BHS<br><br>ORDER DENYING DEFENDANT'S MOTION TO DETERMINE CHOICE OF LAW AND ALLOW SUPPLEMENTAL BRIEFING |

This matter comes before the Court on Defendant TrueBlue, Inc., d/b/a Labor Ready, Inc., and TrueBlue, Inc.'s (collectively "TrueBlue")[1] motion to determine choice of law and allow supplemental briefing (Dkt. 66). The Court has considered the

---

[1] A d/b/a allows a corporation to operate under a name other than the registered name of the corporation, but does not create a separate legal entity. Therefore, for the purposes of this motion, the only Defendant entity is TrueBlue.

ORDER - 1

pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On August 25, 2014, Plaintiff Daniel Joseph ("Joseph") filed a class action complaint against TrueBlue asserting numerous violations of the Telephone Consumer Protection Act, 47 U.S.C § 227, *et seq.* ("TCPA"). Dkt. 1.

On January 8, 2015, TrueBlue filed a motion to compel arbitration. Dkt. 43. On February 11, 2015, the Court denied the motion concluding, in relevant part, that TrueBlue could not enforce any arbitration agreement as a non-signatory to the agreement. Dkt. 51 at 6.

On April 8, 2015, TrueBlue filed the instant motion requesting that the Court apply Eighth Circuit and Minnesota law instead of Ninth Circuit and Washington law. Dkt. 66. On April 20, 2015, Joseph responded. Dkt. 70. On April 24, 2015, TrueBlue replied. Dkt. 71.

## II. FACTUAL BACKGROUND

On December 10, 2013, Joseph signed an "Employment and Dispute Resolution" agreement with Labor Ready, a TrueBlue company. Dkt. 44, Declaration of Todd Gilman ("Gilman Dec."), Ex. A ("Arbitration Agreement"). The agreement provides, in relevant part, as follows:

> Agreement to Arbitrate. Labor Ready and I agree that for any claim arising out of or relating to my employment, application for employment, and/or termination of employment, this Agreement, or the breach of this Agreement, shall be submitted to and resolved by binding individual arbitration under the Federal Arbitration Act ("FAA"). Labor Ready and I

> agree that all claims shall be submitted to arbitration including, but not limited to, claims based on any alleged violation of a constitution, or any federal, state, or local laws; Title VII claims of discrimination, harassment, retaliation, wrongful termination, wages, compensation due or violation of civil rights; or any claim based in tort, contract, or equity. In no way does this agreement limit an employee's ability to bring claims before the NLRB, EEOC, or any local, state or federal governmental or administrative agency, or the procedures of those agencies.
>
> ***
>
> Scope of Arbitration. Labor Ready and I agree that arbitration in no way limits the relief that any party may seek in the jurisdiction in which arbitration has been filed. **LABOR READY AND I AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN MY OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION, COLLECTIVE ACTION, OR REPRESENTATIVE PROCEEDING**. Further, unless both Labor Reedy and I agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. If this specific provision is found to be unenforceable, then the entirety of this arbitration provision shall be null and void. Notwithstanding the foregoing, either party may bring an individual action in small claims court.

*Id.*

On that same day, Joseph entered into a "Dispatch and Employment Terms and Conditions" agreement. Gilman Dec., Ex. B ("Text Agreement"). That agreement provides, in relevant part, as follows:

> **Consent to Text Message Contact**. In order to receive alerts regarding potential job opportunities ("Job Alerts") and other messages related to my actual or prospective employment (such as general announcements and safely tips) and for other purposes, I agree that Labor Ready and its affiliates, agents, service providers, business partners, successors, and/or assigns ("Company") may contact me by telephone at any telephone number that I have provided to Company or will provide to Company, including telephone numbers that are or may be assigned to wireless devices. I acknowledge and agree that Company may place such telephone calls by voice call and/or text messaging (including SMS and/or MMS text messages). I further agree that Company may place such telephone calls through the use of pre-recorded/artificial voice messages

ORDER - 3

> and/or tile use of an automatic telephone dialing device. I understand that Company may contact me by telephone, including by text messaging, any day of the week and at any time, and understand that I may incur charges related to such contact in accordance with my wireless telephone plan otherwise. . . . I waive any right to a legal action under the Telephone Consumer Protection Act, or any similar state or federal law, in connection with any telephone contact from Company.

*Id.*

### III. DISCUSSION

"'[T]raditional principles of state law' determine whether a 'contract [may] be enforced by or against nonparties to the contract through . . . third-party beneficiary theories . . . and estoppel.'" *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)).[2]

In this case, the parties dispute whether Minnesota or Washington law applies to the enforcement of the relevant agreement through third-party beneficiary theories. Specifically, TrueBlue argues that Minnesota only considers a third party's significant relationships with the signatory to the contract whereas Washington law considers both the relationship between the parties and whether the plaintiff's claims are intertwined with the underlying contractual obligations. TrueBlue requests that the Court apply TrueBlue's view of Minnesota law and evaluate the merits of this case under only the "significant relationships" test.

In Washington, the "presumptive local law" applies unless there is "an actual conflict between the laws or interests of Washington and the laws or interests of another

---

[2] This quote from the Supreme Court puts to rest TrueBlue's arguments relating to Eighth Circuit law compared to Ninth Circuit law because the only relevant laws are state laws.

state." *Seizer v. Sessions*, 132 Wn.2d 642, 648–49 (1997). Although TrueBlue moves the Court to apply Minnesota law, it failed to identify any conflict of law in its opening brief. *See* Dkt. 66. Joseph identified this failure in his response brief. Dkt. 70 at 11–12. In reply, TrueBlue argues that the Court may "make [a] choice of law" and "apply the state law of other jurisdictions when relevant to a pending issue." Dkt. 71 at 7. Contrary to TrueBlue's argument, TrueBlue must identify an "actual conflict" of law. *Seizer*, 132 Wn.2d at 648–49. On that issue, TrueBlue argues that a conflict exists based primarily on *CD Partners, LLC v. Grizzle*, 424 F.3d 795 (8th Cir. 2005). Despite TrueBlue's repeated failures to set forth all of its arguments in its opening briefs, there are at least two problems with asserting that *Grizzle* reflects Minnesota law.

First, *Grizzle* was on appeal from the United States District Court for the Southern District of Iowa. There is no discussion of Minnesota law in *Grizzle*, and TrueBlue fails to show how a case on appeal from Iowa may be enforced as Minnesota law.

Second, *Grizzle*, in relevant part, relied on a case originating in Alabama. *Grizzle* adopted the principle that

> [a] nonsignatory can enforce an arbitration clause against a signatory to the agreement . . . when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided.

*Id.* at 798 (internal quotation marks omitted). In adopting that principle, the *Grizzle* court quoted an Eleventh Circuit case, *MS Dealer Services Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999), which in turn quoted *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1432 (M.D. Ala. 1997). There is no discussion of Minnesota law either in *MS Dealer* or

*Boyd*, and TrueBlue fails to show how a case on appeal from or originating in Alabama may be enforced as Minnesota law.  Therefore, the Court declines to consider *Grizzle* as authority on the state of Minnesota law.

TrueBlue also cites *Onvoy, Inc. v. SHAL, LLC*, 669 N.W.2d 344 (Minn. 2003), in support of its position.  Dkt. 71 at 7.  In *Onvoy*, the Minnesota Supreme Court held that, if the signatory corporation could compel arbitration under the relevant contract, then the non-signatory individual agents of the corporation could also compel arbitration of the contract.  669 N.W.2d at 356–57.  There is no indication in *Onvoy* that Minnesota law implements a "significant relationships" test, as in *Grizzle*, or that, under Minnesota law, a court should not consider whether the plaintiff's claims are inextricably intertwined with the relevant contracts.  In fact, the Minnesota Court of Appeals stated that, "[a]lthough the supreme court in *Onvoy* recognized that the principles of equitable estoppel may be applied to compel arbitration, the court did not formally apply the doctrine to the facts before it."  *ev3 Inc. v. Collins*, 2009 WL 2432348, at *3 (Minn. Ct. App. Aug. 11, 2009).  Therefore, TrueBlue has failed to show that *Onvoy* conflicts with Washington law.

Finally, TrueBlue argues that *In re Petters Co., Inc.*, 480 B.R. 346, 361–62 (Bankr. D. Minn. Oct. 12, 2012), stands for the proposition "there is no requirement that the claims alleged be premised on the terms of the contract."  Dkt. 71 at 8.  There is no indication in *Petters* that Minnesota law allows a non-signatory to compel arbitration on a signatory's claims independent of the underlying contract.  In fact, the *Petters* court cited

*PRM Energy Systems, Inc. v. Primenergy, L.L.C.*, 592 F.3d 830 (8th Cir. 2010), for the proposition that

> where signatory has alleged "prearranged, collusive behavior" on part of non-signatory- and signatory-parties, and these claims are "intimately founded and intertwined with" contract at issue, alternative estoppel binds signatory to arbitrate with non-signatory on claims founded on contract.

*Petters*, 480 B.R. at 362. If anything, the *Petters* court recognized the necessity of intertwined claims. Therefore, the Court denies TrueBlue's motion because it has failed to identify a conflict of law.

## IV. ORDER

Therefore, it is hereby **ORDERED** that TrueBlue's motion to determine choice of law and allow supplemental briefing (Dkt. 66) is **DENIED**.

Dated this 12th day of May, 2015.

_____
BENJAMIN H. SETTLE
United States District Judge